UNITED STATES of America, Appellant,

v.

Joseph L. DOAN, Jr., Appellee.

No. 82–1643.

United States Court of Appeals, Third Circuit.

Argued March 11, 1983.

Decided June 27, 1983.

Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Gary S. Glazer (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellant.

John Rogers Carroll (argued), Carroll & Carroll, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, HIGGINBOTHAM and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

I.

A federal grand jury indicted defendant/appellee Joseph L. Doan, Jr. ("Doan") and his brother Richard with charges of violating 26 U.S.C. § 7206(1) (tax perjury) for 1975 and 1976 (Counts One and Two).

The district court declared Joseph Doan's first trial a mistrial because the jury could not reach a verdict. The second trial resulted in a guilty verdict on both counts. The defendant moved the court for a judgment of acquittal asserting that the evidence was insufficient to support the conviction.[1]

---

1. The defendant also moved the court to grant a new trial because the trial court committed error in failing to instruct the jury, in accordance with defendant's requests for instructions, that proof of willfulness independent of his understatement of income was necessary. Although the district court's opinion agreed that the "[f]ailure to charge the jury as requested constituted substantial error," and stated therefore that "both defendants are entitled to a new trial," the court's order granted only a judgment of acquittal. App. at 50a. For this rea-

The district court initially denied defendant's motion, but on reconsideration stated that "[w]ith regard to Joseph Doan, ... there is a complete absence of any evidence—other than the underreporting itself—which would establish the necessary element of willfulness." Appendix ("App.") at 49a. Thus, the district court ordered that Joseph Doan's motion for a judgment of acquittal be granted. App. at 50a. The government appeals this post-verdict order of the district court. We will reverse.

## II.

Joseph Doan had a twenty-five percent ownership interest in D–C Auto Rental ("D–C"). He received "management" fees from D–C prior to its sale to American Auto Leasing Co. ("American") in 1975. D–C continued to pay Doan "management" fees until its final liquidation in 1976. The terms of the sale required American to pay Doan a "consultant" fee of $250 a month for a period of 36 months. However, he was not used as a consultant. Additionally, American agreed to pay Joseph Doan $500 a month in consideration of his "covenant" not-to-compete with American for the next 5 years. Joseph Doan began receiving the monthly "consultant" and "covenant" fees in the fall of 1975.

Prior to the sale, Doan received 1099 forms from D–C's bookkeeper to reflect the "management" fees D–C paid to him. A representative of the Audit Division of the Internal Revenue Service described the 1099 form as follows:

> [A] 1099 form is merely an information item that is issued to the recipient of income of more than $600 in one year. One copy would be retained by the payer, one copy would go to the recipient and one copy [would] be sent to the Internal Revenue Service.

App. at 100a. Because the bookkeeper was terminated shortly after D–C's sale to American, the 1099 forms which would have reflected the "management," "consultant" and "covenant" fees for 1975 and 1976 were not prepared or sent to Doan.

Doan did not report his receipt of those fees on his 1975 and 1976 income tax returns. His failure to include the "management," "consultant" and "covenant" fees for the two years amounted to additional income of $22,838 which increased his tax liability by $9,156. He did, however, receive 1099 forms for 1977 and 1978, and he did report the fees paid to him in 1977 and 1978 as income.

The defendant initially testified at trial that he was uncertain when he received them whether the checks American sent to him in payment of his "consultant" and "covenant" fees represented taxable income. App. at 127a–28a. He finally admitted that he knew these fees were income when confronted with prior sworn testimony during cross-examination. (App. at 128a).

Joseph Doan has been charged with understating his income by an amount which would have been reflected on the 1099 forms for 1975 and 1976.

## III.

The only issue which we must decide is whether when viewed in the light most favorable to the government there is substantial evidence to sustain the jury's decision finding the defendant, Doan, guilty of filing false income tax returns (tax perjury) for 1975 and 1976 in violation of 26 U.S.C. § 7206(1). *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Dixon,* 658 F.2d 181, 188 (3d Cir.1981). The crime of tax perjury is defined in 26 U.S.C. § 7206(1) as follows: "any person who ... [w]illfully makes and subscribes any return ... which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter," shall be guilty of a felony.

There is no dispute in this case about the fact that Joseph Doan underreported his income for the years 1975 and 1976. However, as the parties agree, the under-

son, we believe that we are confronted only    with an order of acquittal.

statement of income, standing alone, is insufficient to sustain a conviction of tax perjury. In addition, there must be evidence that the defendant *willfully* made and subscribed to a return which he did not believe to be true. We hold that there is sufficient evidence, independent of Joseph Doan's underreporting of income, from which a jury would properly find the element of willfulness beyond a reasonable doubt.[2] The record demonstrates that Joseph Doan underreported his income by $22,200 for 1975 and 1976 by failing to disclose income he received from D–C in the nature of "management" fees and income he received from American in the nature of "consultant" and "covenant" not-to-compete fees.

■ Doan argued to the jury that he failed to report his fees for 1975 and 1976 because he was not reminded of, or put on notice that he had received the income or the amounts of fee income he had received for 1975 and 1976. He also emphasized his history of accurate reporting and the relatively minor role that he played in the business affairs of D–C, including its sale to American, to prove that he was not willful in underreporting his income for 1975 and 1976. Defense counsel also informed the jury that Doan had been a model citizen and that his failure to report the income was attributable to Doan's non-receipt of 1099 forms and his lack of formal education in accounting, business and taxation.

The defendant was not assisted in the preparation of his income tax return and has had no educational background in accounting, business or taxation. Nonetheless, he was sophisticated enough in his preparation to itemize deductions for state, local, real estate, and sales taxes, interest paid on loans, contributions and certain business expenses which were contained in records that he kept.

At trial, Doan admitted that he knew the fees were income at the time he received them. App. at 128a, 137a. His awareness is confirmed by the fact that Doan reported the "management" fees he received from D–C for the years 1971 to 1974 and the "consultant" and "covenant" fees he received from American for the years 1977 and 1978. Doan testified that in each of these years he used the preceding year's return as a guide in preparing the current year's return. Therefore, he was reminded in 1975 of the fees he received from D–C in prior years even though he did not receive a 1099 form for 1975. App. at 123a.

The evidence also demonstrates that the defendant's return for 1975 reported income of $43,600 but omitted $8,200, an amount that approached 20 percent of his reported income. In 1976, the defendant reported income of $38,750 but omitted additional income of $14,000. This unreported figure of $14,000 was approximately 36 percent of defendant's reported income for that year. The defendant's counsel conceded that if an amount equal to one third of defendant's reported income had been omitted, then "that would be indeed a pretty big figure. . . ." App. at 147a. For 1976, at least 36 percent of his reported gross income was omitted.

Moreover, the government introduced into evidence the 17 checks which Doan endorsed and deposited over the two-year period in question. One check was as large as $6,000. Another check for $3,500 was received less than two months before the defendant filed his tax return for 1975. The government used this evidence to prove that Doan knowingly omitted income from his 1975 and 1976 tax returns.

The jury was instructed by the court to consider the testimony of witnesses, exhibits and stipulations agreed to by the parties. Based on its evaluation of this evidence the jury members were informed that they were permitted to draw such reasonable inferences which they deemed proper. The jury was instructed properly on the necessity of finding that the defendant willfully underreported his income for 1975 and 1976 in order to find him guilty of tax perjury.

There are inferences to be drawn from the evidence in this case which could conceivably cause some juries to find a reason-

---

**2.** Therefore, we need not address the issue whether willfulness under § 7206(1) may in some instances be inferred from the underreporting of income alone.

able doubt. Indeed, the evidence and arguments suggesting inferences favorable to the defendant were asserted with vigor and tenacity by his counsel. The proper test in this case, however, is not whether the defendant had a plausible rebuttal to the evidence that was prima facially adverse to his case; rather it is whether there was substantial evidence for a rational jury to find that the government had proven willfulness of the defendant's underreporting beyond a reasonable doubt. Based on the evidence in this case a rational jury could find, beyond a reasonable doubt, that the defendant was guilty of wilfully underreporting his income for 1975 and 1976. Thus we conclude that the district court erred in granting defendant's motion for judgment of acquittal and therefore will reverse and vacate the judgment of acquittal.