**UNITED STATES of America**

v.

**MARTORANO, John, Appellant.**

No. 84–1511.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
June 18, 1985.

Decided July 8, 1985.

Raymond M. Brown, Alan Dexter Bowman, Brown, Brown and Furst, P.A., Newark, N.J., for appellant.

David E. Fritchey, Dept. of Justice, Philadelphia, Pa., William C. Bryson, U.S. Dept. of Justice, and Sara Criscitelli, Appellate Section, Criminal Div., Dept. of Justice, Washington, D.C., for appellee.

* Honorable Gustave Diamond of the United States District Court for the Western District of Pennsylvania, sitting by designation.

1. 18 U.S.C. § 1027 provides:
  Whoever, in any document required by title I of the Employee Retirement Income Security Act of 1974 (as amended from time to time) to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan, makes any

Before ALDISERT, Chief Judge, GIBBONS, Circuit Judge, and DIAMOND, District Judge.*

### OPINION OF THE COURT
PER CURIAM.

Section 1027 of Title 18 provides that it shall be a criminal offense to make a false statement in any document required by Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*[1] The major question for decision on this appeal is whether an understatement of profits by a health care organization that furnishes outpatient medical coverage to members of a health and welfare fund governed by ERISA constitutes a violation of the statute. The district court held that it does. *See* 596 F.Supp. 621 (E.D.Pa.1984). We affirm.

#### I.

Teamsters Local 837 Health and Welfare Fund provides benefits, including health services, for members of Local 837 of the International Brotherhood of Teamsters. In September 1978, the Fund contracted with AMMA Health Center, Inc. to provide outpatient medical coverage to union members and their families. Appellant Martorano is the administrator and principal owner of AMMA.

In response to the Fund's request, on February 17, 1981, appellant provided the Fund with a "utilization report" that detailed the frequency with which union members utilized AMMA's services and the costs associated therewith. Appellant submitted a second report on April 9, 1981. The Fund needed these utilization reports

false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such title or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such title to be published or any information required by such title to be certified, shall be fined not more than $10,000, or imprisoned not more than five years, or both.

to complete "5500 forms" for the Department of Labor, as required by ERISA.

Rather than providing the actual cost of services, appellant phrased his reports in terms of the "dollar value" of services used. Appellant calculated these dollar values by estimating how much the medical services provided would cost based on a Blue Shield summarization of charges. Appellant then arrived at an "annual net profit" by subtracting the total dollar value of services plus the cost of administration from the amount of premiums paid by the Fund. The Fund's trustees and administrator, however, understood these reports to reflect AMMA's actual costs and actual profit. The Fund granted a premium increase to AMMA based on appellant's explanation that AMMA was losing money, an explanation confirmed by the utilization reports appellant submitted. A subsequent Pennsylvania state investigation revealed that the utilization reports significantly understated AMMA's profits, by as much as $47,000. Brief for the Appellee at 9.

Martorano was indicted and convicted for violating § 1027 on the basis that the utilization reports contained false statements in ERISA documents. On appeal he argues that the conviction is invalid because § 1027 does not apply to medical service providers, but only to fiduciaries of union pension and welfare funds. Because our examination of the requirements of § 1027 involves the interpretation and application of legal precepts, our review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102–03 (3d Cir.1981).

## II.

In *United States v. S & Vee Cartage Co.*, 704 F.2d 914 (6th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983), the court considered whether § 1027 applied to an employer. Section 1027 provides that "whoever" makes false statements or conceals facts shall be fined or imprisoned. The Sixth Circuit interpreted the use of the term "whoever" as "clearly ... sufficiently broad to include employers as well as fiduciaries." *Id.* at 917. *Cf.*

*United States v. Nardello*, 393 U.S. 286, 292–93, 89 S.Ct. 534, 537–38, 21 L.Ed.2d 487 (1969) (giving broad construction to the term "whoever" in Travel Act, 18 U.S.C. § 1952). In addition, the court made reference to the legislative history of ERISA's provision precurser, the Welfare and Pension Plans Disclosure Act (WPPDA) and noted that criminal statutes, including § 1027, have been amended to refer to ERISA rather than the WPPDA. The goal of the WPPDA was to "protect the [plans'] participants and beneficiaries ... by requiring the plan to disclose and report financial information." 704 F.2d at 918. The court determined that extending liability to employers promoted that goal. *Id.*

We are satisfied with the reasoning of the Court of Appeals of the Sixth Circuit in *S & Vee Cartage Co.* and conclude that it is appropriate to apply § 1027 to appellant's activity. The statutory language is clearly broad enough to cover medical service providers. Moreover, subjecting appellant to the reach of § 1027 would promote the goals of ERISA. If medical service providers are not sanctioned for providing false information, plan participants will suffer.

We believe that the major limitation on the reach of § 1027 is that the false statements must be contained in documents required by ERISA "to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan...." 18 U.S.C. § 1027. The record in this case supports the government's claim that the utilization reports were needed by the Fund's administrator to file the 5500 forms. Health and welfare benefit plans must file a 5500 form with the Department of Labor, which includes a summary of benefits paid by and expenses of an "insurance company, insurance service, or other similar organization" which sells or guarantees plan benefits. 29 U.S.C. § 1023(e). Appellant, who sold medical services to the Fund, thus falls into this statutory category. Regulation 29 C.F.R. § 486.3(c) requires the fund to main-

tain information certified to the administrator by insurance companies or similar organizations. Without the utilization reports, the Fund's health plan could not be monitored by the government. App. for Appellee at 76–77. Thus, appellant cannot exempt himself from the statute based on the claim that the documents he submitted to the Fund were not covered by § 1027.

### III.

 We have also considered other contentions raised by appellant. We conclude that his conviction on this ERISA count is not inconsistent with his acquittal on another § 1027 count and a mail fraud count. *See United States v. Powell,* — U.S. ——, ——, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984). We also conclude that a general intent (a failure to disclose) rather than a specific intent (a failure to disclose knowing that such failure violates a statutory disclosure requirement) is all that is required to prove a violation of § 1027. *See S & Vee Cartage Co.,* 704 F.2d at 919; *United States v. Tolkow,* 532 F.2d 853, 857–59 (2d Cir.1976) (WPPDA case).

Appellant next argues that he made no false statements nor concealed facts. The record clearly discloses that appellant understated his profits and administrative expenses in the utilization reports. His use of the system of reporting "dollar value of services" and "annual net profit" permitted him to disguise where and how the Fund's premiums were being spent. Appellant accomplished this concealment by inducing the Fund's trustees and administrator to believe he was providing the Fund with actual costs and expenditures. App. for Appellant at DA85–86; DA90.

Appellant maintains that because he relied on the good faith advice of his attorney that he need not disclose his actual profits and expenditures, the evidence does not support the jury's conclusion that he intended to conceal facts or make false statements. Appellant, however, cannot fulfill the requirements of this particular defense. Such a defense based on good faith reliance on an attorney's advice requires full disclosure to counsel of all material facts and retention of counsel for advice and not to ensure the success of the fraudulent scheme. *See United States v. Carr,* 740 F.2d 339, 347 (5th Cir.1984). Appellant neither fully disclosed the nature of the utilization reports, app. for appellee at 117–18, nor did he rely on his attorney's advice. He told his attorney what position to argue before the Fund, and his attorney confirmed that position was acceptable. *Id.* at 98, 111.

A final argument concerned an alleged error in a supplemental jury instruction. Following a remand on May 20, 1985 by this court pursuant to Rule 10(e), Federal Rules of Appellate Procedure, the district court concluded that the record supplied this court on appeal contained a typographical error. We hold that the record, as now corrected in accordance with the district court's order of June 11, 1985, does not indicate an error in the court's charge.

### IV.

The judgment of the district court will be affirmed.