15-1798-cr
*United States v. Libous*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

      At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11ᵗʰ day of April, two thousand sixteen.

PRESENT:    AMALYA L. KEARSE,
                 JOSÉ A. CABRANES,
                 DENNY CHIN,
                        *Circuit Judges.*

---

UNITED STATES OF AMERICA,

        *Appellee,*

        v.                             No. 15-1798-cr

MATTHEW LIBOUS,

        *Defendant-Appellant.*

---

| | |
|---|---|
| **FOR THE UNITED STATES OF AMERICA:** | James McMahon & Anna M. Skotko, Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY. |
| **FOR DEFENDANT-APPELLANT:** | John Meringolo, Meringolo & Associates, P.C., New York, NY. |
| | Clara Kalhous, New York, NY. |

1

Appeal from the May 18, 2015 judgment of the United States District Court for the Southern District of New York (Vincent L. Briccetti, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Defendant-appellant Matthew Libous ("Libous") appeals from the District Court's May 18, 2015 judgment, which followed the District Court's January 26, 2015 bench-trial verdict finding him guilty on three counts of "[w]illfully mak[ing] and subscrib[ing] any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter," in violation of 26 U.S.C. § 7206(1). The counts on which Libous was found guilty related to the United States Individual Income Tax Returns, Forms 1040 (the "tax returns"), that he filed for the 2007 (Count Two), 2008 (Count Three), and 2009 (Count Four) tax years. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

In reviewing a judgment of conviction entered after a bench trial, we view the evidence "in the light most favorable to the government," and we "defer to the [factfinder's] determination of the weight of the evidence and the credibility of the witnesses, and to the [factfinder's] choice of the competing inferences that can be drawn from the evidence." *United States v. LaSpina*, 299 F.3d 165, 180 (2d Cir. 2002) (internal quotation marks omitted); *see, e.g., United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) ("[O]n review of the sufficiency of the evidence to support a criminal conviction . . . . [,] the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (emphasis in original)). These principles apply as well when "[p]roof of the elements of the crimes charged [was] entirely by circumstantial evidence." *LaSpina*, 299 F.3d at 180 (internal quotation marks omitted); *see, e.g., Jackson*, 443 U.S. at 324–25 ("From the circumstantial evidence in the record, it is clear that the trial judge could reasonably have found beyond a reasonable doubt that the petitioner did possess the necessary intent at or before the time of the killing.").

Further, "[i]t is the job of the factfinder in a judicial proceeding to evaluate, and decide whether or not to credit, any given item of evidence. Whether, and to what extent, testimony that has been admitted is to be credited are questions squarely within the province of the factfinder." *United States v. Norman*, 776 F.3d 67, 77 (2d Cir. 2015). Thus, where the judge is the factfinder, he or she "is free to believe part and disbelieve part of a defendant's trial testimony." *Id.* (discussing sentencing); *see United States v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008) (discussing suppression issue). In short, "[w]e are not allowed to second-guess the [district court's] credibility assessments." *United States v. Medunjanin*, 752 F.3d 576, 584–85 (2d Cir. 2014) (discussing suppression issue).

As for the district court's legal conclusions, we review them de novo. *See Malmberg v. United States*, —F.3d—, 2016 WL 850859, at *2 (2d Cir. Mar. 4, 2016). This includes a district court's conclusion that the evidence introduced at trial was sufficient to sustain a guilty verdict. *See United States v. Taylor*, —F.3d—, 2016 WL 805638, at *6 (2d Cir. Mar. 2, 2016). Nevertheless, "[a] defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the [district court's] verdict." *Id.* (internal quotation marks omitted). Indeed, we can enter "[a] judgment of acquittal . . . only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

Libous raises two issues on appeal. First, he argues that the evidence introduced at trial was insufficient to support the District Court's finding that he willfully signed a materially false tax return in 2007, 2008, or 2009. Second, he argues that the District Court's guilty verdict on Count Two should be overturned because two of the witnesses who testified against him improperly colluded. Because we find both of these arguments unpersuasive, we affirm the District Court's judgment.

## I. Sufficiency of the Evidence

Beginning with Libous's first argument, we cannot say that no rational trier of fact could have found that he acted willfully with respect to his 2007, 2008, or 2009 tax returns.

### A. Libous's 2007 Tax Return

As concerns Libous's 2007 tax return, the District Court found that Libous "did not report four checks he received and deposited into his personal account, totaling $34,500. And the focus of the trial . . . as to this point . . . was on . . . one check for $30,000 [from Michael Boemio ("Boemio")], which, of course, [was] the vast majority of the $34,500." A-704.

Libous argued at trial—and argues again on appeal—that this $30,000 check was a gift, but the District Court was satisfied that it was "for legal fees and/or services rendered," and we see no reason to question its conclusion in this regard. *Id.* The District Court based this finding in large part on the testimony of Boemio himself, who stated "repeatedly . . . that he paid Mr. Libous the $30,000 in return for [Libous] sitting in on [real-estate] closings and making sure they got done properly," and that "he would not have paid Mr. Libous the $30,000 had Libous not done the work." A-704–05.[1] The District Court specifically found Boemio's testimony on this point to be "credibl[e]." A-

---

[1] *See also* A-151 ("Q: . . . And what did you tell Mr. Libous . . . that you would do for him if he sat in on the closings and made sure all the closings got done? A: I would give him $30,000. Q: . . . And is that check the $30,000 you gave him for sitting in on the closings and making sure they got done? A: Yes."); A-248 ("Q: . . . If the closings hadn't been done, would Mr. Libous have

705. Although Libous disagrees, asserting that Boemio's testimony was instead "incredible," Def.'s Br. 37, "the proper place for a challenge to a witness's credibility is in cross-examination and in subsequent argument to the [factfinder], not in an appellate brief," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989) (internal quotation marks omitted).

This credibility determination underlay the District Court's inference regarding Libous's willfulness, which was permissibly based on circumstantial evidence. *See United States v. Dyer*, 922 F.2d 105, 108 (2d Cir. 1990) ("[A]n inference of willfulness based on circumstantial evidence is permissible . . . ."); *cf. McFadden v. United States*, 135 S. Ct. 2298, 2304 n.1 (2015) ("[W]ith most *mens rea* requirements, the Government can prove the requisite mental state through . . . circumstantial evidence."). Libous's 2007 tax return "reflects that he reported[ ] approximately[ ] $34,000 in income for that year, and thus the additional $34,500 that he failed to report was approximately half of his total income for the year." A-705. The District Court found that Libous acted willfully because it did "not believe Mr. Libous could have forgotten to report half of his income for the year." *Id.* In so finding, the District Court did not err. Courts have inferred willfulness on the basis of a defendant's failure to report a far smaller percentage of total income. *See, e.g., United States v. Doan*, 710 F.2d 124, 125–26 (3d Cir. 1983) (holding that there was "substantial evidence to sustain the jury's decision finding the defendant . . . guilty of filing false income tax returns . . . in violation of 26 U.S.C. § 7206(1)" in part because "[t]he evidence . . . demonstrate[d] that the defendant's return . . . reported income of $43,600 but omitted $8,200, an amount that approached 20 percent of his reported income," and which also constituted approximately 16 percent of his total income).

### B. Libous's 2008 Tax Return

With regard to Libous's 2008 tax return, Libous claims that the District Court "based its determination [that Libous acted willfully] largely on the fact the percentage of Libous'[s] income represented by the unreported amounts appeared to be significant." Def.'s Br. 38. But in the context of Libous's 2008 tax return, the District Court's discussion of the unreported percentage of his total income related to its finding of materiality, not willfulness. *See* A-706 ("Given that the unreported income is approximately one-fourth of the total income reported, it's clear that the failure to report these amounts made the 2008 return materially false."). Instead, the District Court's rationale for finding that Libous acted willfully was that it saw "a pattern of known and intentional understatement of income" when 2008 was "viewed in conjunction with the 2006 and 2007 tax years." *Id.*[2] Libous does not meaningfully challenge the District Court's reliance on this pattern

---

received that $30,000? A: No. Q: If Mr. Libous hadn't gone to the closings, would he have received the $30,000? A: No.").

[2] Libous was not charged in connection with his 2006 tax returns "because that year is barred by the statute of limitations," but the District Court thought that the evidence introduced at trial made

4

evidence. *See* Def.'s Br. 38–41. And in any event, it was permissible. *See United States v. Koskerides*, 877 F.2d 1129, 1138 (2d Cir. 1989) ("Appellant's pattern of evasion over a three year period, the magnitude of the evasion in this case, and appellant's understanding and involvement in the filing of his income tax returns were sufficient to infer willfulness."); *see also United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1996) ("Patterns of understating or failing to report income are also considered evidence of willfulness.").

### C. Libous's 2009 Tax Return

Libous's principal argument regarding his 2009 tax return is equally unavailing. Libous argues that the District Court's finding that he could not claim he relied on the advice of Robert Marino ("Marino"), a certified public accountant who prepared his 2009 tax return, was "unsupported by the testimony." Def.'s Br. 44. But the record amply supports the District Court's finding that "Mr. Marino [did] not [become] aware of the [unreported] personal expenses" that Libous's company paid on his behalf until after Libous's 2009 tax return was filed. A-707.[3] In fact, Libous's counsel, John Meringolo ("Meringolo"), effectively admitted as much at trial.[4] And "[r]eliance on [the] advice [of an accountant], offered as a defense" to tax fraud, requires that a defendant "fully and honestly lay[ ] all the facts before" the accountant. *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997) (internal quotation marks omitted); *accord United States v. Blanchard*, 618 F.3d 562, 576 (6th Cir. 2010) ("[A]lthough [the defendant] argues that the jury could not reasonably have found that he knowingly claimed false claims because he relied on . . . [the] professional advice [of] his accountant, this argument is undermined by the testimony indicating that [the defendant] misled and withheld pertinent information from [his accountant]."); *United States v. Falcone*, 544 F.2d 607, 610 n.6 (2d Cir. 1976) ("Appellants do not question the correctness of the court's jury instruction that appellants' reliance upon [the] expert advice [of their accountant] should be considered a circumstance

---

it "clear . . . that he filed a false tax return for 2006." A-704. Libous's "conduct with respect to that return inform[ed] [the District Court's] thinking" about the 2007 and 2008 returns. *Id.*

[3] *See, e.g.,* A-424 ("A: We may have gotten wind of [the unreported personal expenses] sometime in 2010. . . . Q: And when you say sometime in 2010, would that have been after the 2009 partnership and personal returns were filed? A: More than likely, yes.").

[4] *See* A-650 ("THE COURT: Mr. Marino and [Libous's company's bookkeeper, Jamie D'Abruzzo ("D'Abruzzo")] both testified . . . that Mr. Marino became aware of the personal expenses in 2010, after the 2009 return was already prepared and filed. MR. MERINGOLO: That is correct. THE COURT: Well, that's not the same as what you just said. You just said D'Abruzzo and Marino always knew about [the personal expenses]. But that's not what the—the record doesn't—I mean, I [would] have to find the opposite of what they both testified to. MR. MERINGOLO: True.").

disproving fraudulent intent only if the jury found that the advice was given after full disclosure of all relevant and material facts.").

## II.     Witness Collusion

Lastly, we reject Libous's argument that the District Court's guilty verdict on Count Two (2007 tax return) should be overturned because Boemio and Marino, Libous's accountant, improperly colluded. Specifically, Libous asserts that "Boemio's testimony that the $30,000 personal check to Libous was a payment for services rendered was materially false." Def.'s Br. 50. "In order to be granted a new trial on the ground that a witness committed perjury," however, "the defendant must show that . . . the perjured testimony remained undisclosed during trial." *United States v. Cromitie*, 727 F.3d 194, 221 (2d Cir. 2013) (internal quotation marks omitted). Here, all of the facts that Libous suggests support his position that Boemio perjured himself were disclosed before or during trial. For example, Libous makes much of the fact that "Boemio had stated in proffer sessions [with the Government] that he had given Libous the $30,000 check to help him repay his student loans." Def.'s Br. 50. But these same statements were the subject of an extensive colloquy between the District Court, Libous's counsel, and Boemio during Boemio's testimony at trial. *See* A-193–99.

## CONCLUSION

We have considered all of Libous's other arguments on appeal and found them to be without merit. Accordingly, we **AFFIRM** the District Court's May 18, 2015 judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk